UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INTERFOOD, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-10825-JLT |
| | * | |
| SELECT VEAL FEEDS, INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

March 5, 2013

TAURO, J.

I.  Introduction

Plaintiff Interfood, Inc. ("Interfood") brings this action against Defendant Select Veal Feeds, Inc. ("Select Veal") for breach of contract. Select Veal moves to dismiss Interfood's complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. For the following reasons, Select Veal's Motion to Dismiss [#3] is DENIED.

II.  Factual Background

Select Veal, a Pennsylvania company with no physical presence in Massachusetts, maintained a contractual course of dealing with Interfood, a Massachusetts company. This course of dealing began in November 2009, when Interfood agreed to sell whey protein concentrate ("WPC") to Select Veal for weekly delivery in 2010. The two parties exchanged fifty-five communications regarding pricing and shipment terms.[1] Interfood would send Select Veal a sales

---

[1] Rivera Aff. ¶ 7 [#10-1].

1

confirmation containing delivery schedules and WPC amounts for the year.[2] Select Veal would then send payments via mail to Interfood's Massachusetts office.[3]

In November 2010, the parties decided to continue the weekly WPC transactions through 2011. They exchanged forty-five correspondences regarding the terms and performance of this new contract.[4] The mechanics of the new contract were nearly identical to the mechanics of the previous contract.[5]

In November 2011, Select Veal again ordered WPC for weekly delivery during 2012. As in previous years, Interfood sent Select Veal a sales confirmation. Select Veal, however, opposed two new terms in the sales confirmation, including a provision requiring Select Veal to wire payment electronically to a foreign account.[6] The parties disputed these new provisions through the exchange of at least fifteen communications[7] but could not resolve their disagreements. As a result, Select Veal informed Interfood on January 16, 2012, that it would not purchase the contemplated WPC.[8] From the beginning of their course of dealing to this recent breakdown in their relationship, the parties consummated approximately 279 transactions totaling $6.7 million.[9]

---

[2] Compl. ¶ 8 [#1-1]; see also Aydin Aff. Ex. 2 [#6-1].

[3] Manning Aff. ¶ 2 [#10-2].

[4] Rivera Aff. ¶ 8 [#10-1].

[5] See Manning Aff. ¶ 2 [#10-2].

[6] Aydin Aff. ¶¶ 4-5 [#6].

[7] Rivera Aff. ¶ 9 [#10-1].

[8] Aydin Aff. ¶ 13 [#6].

[9] Manning Aff. ¶¶ 3, 5 [#10-2].

Interfood sued Select Veal in Massachusetts Superior Court for breach of contract, seeking damages and attorney's fees. Select Veal removed the action to this court and now moves to dismiss Interfood's complaint for lack of personal jurisdiction.

III.   Discussion

    A.   Legal Standard

This court applies the prima facie standard, the "most conventional" analysis for personal jurisdiction.[10] Under the prima facie standard, the court first assumes the truth of Interfood's alleged facts, then adds any uncontroverted facts advanced by Select Veal.[11] Using these facts, the court considers whether the evidence, "if credited, is enough to support findings of all facts essential to personal jurisdiction."[12]

    B.   Personal Jurisdiction Analysis

Interfood bears the burden of demonstrating that this court's exercise of jurisdiction comports with both (1) the Massachusetts long-arm statute, and (2) constitutional due process.[13]

        1.   Massachusetts Long-Arm Statute

The Massachusetts long-arm statute reaches Select Veal if Interfood's cause of action arises from Select Veal's "transacting any business in this commonwealth."[14] Because the

---

[10] Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

[11] Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

[12] Boit v. Gar-Tec Prods., 967 F.2d 671, 675 (1st Cir. 1992).

[13] Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).

[14] Mass. Gen. Laws ch. 223A, § 3(a).

Massachusetts Supreme Judicial Court has interpreted the long-arm statute's reach as limited only by constitutional due process,[15] this court proceeds directly to the due process analysis.

### 2. Due Process

This court's exercise of personal jurisdiction must fall within the limits of due process under the Fourteenth Amendment of the Constitution.[16] The First Circuit uses a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.[17]

#### a. *Relatedness*

This "flexible" and "relaxed" test[18] asks whether Select Veal's contacts with Massachusetts form an " 'important, or [at least] material, element of proof' in the plaintiff's case."[19] Material contacts include, but are not limited to, communications "instrumental either in

---

[15] "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 280 N.E.2d 423, 424 (Mass. 1972) ("We see the function of the long arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States."); see also Adelson v. Hananel, 652 F.3d 75, 80-81 (1st Cir. 2011) ("We have construed the Massachusetts long-arm statute as being coextensive with the limits permitted by the Constitution.").

[16] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

[17] United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).

[18] Pritzker, 42 F.3d at 61.

[19] 163 Pleasant St. Corp., 960 F.2d at 1089 (alteration in original) (quoting Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir. 1986)).

the formation of the contract or in its breach"[20] or "prior dealings [that] are part of the foundation upon which the [new transactions] were built."[21]

Interfood provides sufficient evidence to satisfy this relatedness requirement. First, its action against Select Veal would not have arisen but for Select Veal's contacts with Massachusetts. The communications surrounding the failed negotiations in late 2011 and early 2012 relate directly to the alleged breach of the disputed contract. Furthermore, the disputed contract built upon prior successful contracts, spawned through at least one hundred communications. Thus, Interfood's action directly arises out of, or relates to, Select Veal's Massachusetts contacts.

      b.    *Purposeful Availment*

The two cornerstones of purposeful availment are voluntariness and foreseeability. Voluntariness requires that the defendant's action be "not based on the unilateral actions of another party or a third person."[22] Foreseeability requires the reasonable anticipation that a court in the forum state could exercise personal jurisdiction over the defendant based on the defendant's forum contacts.[23]

Interfood has sufficiently established that Select Veal acted in a voluntary manner that renders the exercise of jurisdiction by this court foreseeable. Select Veal directed dozens of

---

[20] Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999).

[21] Hewlett-Packard Co. v. ICL Network Solutions, No. 05-40153, 2005 WL 3728713, at *4 (D. Mass. Nov. 29, 2005).

[22] Nowak v. Tak How Invs., 94 F.3d 708, 716 (1st Cir. 1996) (citing Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)).

[23] World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

communications into Massachusetts for over two years to consummate contractual performance.[24] This course of dealing induced 279 transactions totaling $6.7 million. Thus, the voluminous and long-term nature of Select Veal's contacts demonstrates that Select Veal, rather than being a "passive purchaser,"[25] has purposefully availed itself of this state's jurisdiction.[26]

      c.    *Gestalt Factors*

The five "gestalt" factors include the: (1) burden on the defendant; (2) interest of the forum state; (3) convenience to the plaintiff;[27] (4) effect on judicial efficiency; and (5) promotion of substantive social policy.[28]

Massachusetts undoubtedly has a strong interest in protecting one of its corporate citizens

---

[24] U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 12 (1st Cir. 1990) ("[W]e analyze . . . 'all the communications and transactions between the parties, before, during and after [formation].' " (citation omitted)); see also Burger King, 471 U.S. at 478-79.

[25] See Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 934-35 (1st Cir. 1985) (classifying defendant as a passive purchaser because defendant's single guaranty was an "isolated act" that did not suggest "any intent . . . to exploit the local economy").

[26] Hewlett-Packard Co., 2005 WL 3728713, at *5 (holding that defendant's voluminous communications, inducing transactions totaling $300,000, established purposeful availment); L&P Converters, Inc. v. H.M.S. Direct Mail Serv., 634 F. Supp. 365, 366 (D. Mass. 1986) (suggesting that "continuous negotiations" between the parties would negate a finding of passivity); see WPI Elecs., Inc. v. Super Vision Int'l, Inc., No. 99-426, 2000 WL 1466118, at *5-8 (D.N.H. Jan. 27, 2000) (finding that evidence of an "on-going relationship extending over several months, if not longer," demonstrated that defendant was not a passive purchaser).

[27] Select Veal argues that proceeding in Massachusetts unfairly prejudices plaintiff Interfood because Interfood moved its offices to Florida after filing the complaint. Because the inquiry into the timing of personal jurisdiction focuses on contacts that occur "before and surrounding the accrual of the cause of action," this court rejects Select Veal's argument. Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005).

[28] Nowak v. Tak How Invs., 94 F.3d 708, 717 (1st Cir. 1996) (citing Burger King, 471 U.S. at 477).

against an alleged breach of contract.[29] Moreover, this court "must accord deference to the [plaintiff's] choice of a Massachusetts forum."[30] Proceeding in Massachusetts imposes no constitutionally significant adversity on Select Veal or the general administration of justice.[31] Thus, this court's exercise of personal jurisdiction over Select Veal is reasonable and "does not offend 'traditional notions of fair play and substantial justice.' "[32]

V.   Conclusion[33]

For the foregoing reasons, Defendant Select Veal's Motion to Dismiss [#3] is DENIED.

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge

---

[29] See Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994).

[30] Nowak, 94 F.3d at 718 (citing Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 151 (1st Cir. 1995)).

[31] E.g., Pritzker, 42 F.3d at 64; Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 210-12 (1st Cir. 1994); United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 46-47 (1st Cir. 1993).

[32] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).

[33] Because this court denies Select Veal's motion to dismiss, it does not consider Interfood's alternative request to transfer venue.