UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INTERFOOD, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 12-10825-JLT |
| SELECT VEAL FEEDS, INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

January 15, 2014

TAURO, J.

I.   Introduction

Plaintiff Interfood, Inc. brings this suit against Defendant Select Veal Feeds, Inc. for an alleged breach of a contract regarding the delivery of whey protein concentrate. Presently at issue is Defendant's Motion for Summary Judgment [#38]. For the following reasons, the Motion is ALLOWED.

II.   Background

Plaintiff is a global dairy supplier.[1] Both Parties are merchants under the Uniform Commercial Code.[2] In November 2009, Defendant entered into a purchase agreement with Plaintiff for the sale and delivery of whey protein concentrate ("WPC") in 2010.[3] The Parties

---

[1] Compl. ¶ 3 [#1-1].

[2] Compl. ¶ 4 [#1-1]; Def.'s Separate Statement Undisputed Facts & Supporting Evidence R. Supp. Mot. Summ. J. ¶ 21 [#39] [hereinafter Def.'s Facts].

[3] Compl. ¶ 6 [#1-1].

continued their arrangement throughout 2011.[4]

In November 2011, the Parties attempted to negotiate a contract for WPC for 2012.[5] As part of that negotiation, on November 18, 2011, Diane Ogiba, of Plaintiff, sent an email to Adnan Aydin, of Defendant.[6] The email attached a proposed sales confirmation and stated, in relevant part: "To complete our files we ask you kindly to return us a copy signed and stamped by you for acceptance . . . ."[7] The proposed sales confirmation contained a term that would have required Defendant to pay for wooden pallets on which the WPC would be delivered each week.[8]

Defendant did not sign or stamp the November 18 proposed sales confirmation.[9] Rather, on November 21, Aydin objected to the November 18 proposed sales confirmation in an email to Fabian Rivera of Plaintiff.[10] Specifically, Aydin stated: "I really don't think it is appropriate to ask us to pay for pallets. We are buying WPC and at such a premium, they can have their pallets back."[11]

In response to Aydin's email, later that day, Ogiba, at Rivera's direction, emailed Defendant a revised proposed sales confirmation.[12] The revised proposed sales confirmation did

---

[4] See Compl. ¶¶ 11–15 [#1-1].

[5] See Pl.'s Opp'n Def.'s Mot. Summ. J., at 2 [#43] [hereinafter Opp'n]; Def.'s Mot. Summ. J., Ex. C, 1 [#38]; Def.'s Mot. Summ. J., Ex. A ¶ 5 [#38]; Compl. ¶ 16 [#1-1]. See generally Def.'s Mot. Summ. J., Ex. B [#38] [hereinafter Rivera Dep.].

[6] Def.'s Mot. Summ. J., Ex. D, 1–3 [#38].

[7] Def.'s Mot. Summ. J., Ex. D, 1 [#38].

[8] Def.'s Facts ¶ 6 [#39].

[9] Rivera Dep., at 167:4–6.

[10] Def.'s Mot. Summ. J., Ex. E, 1 [#38] [hereinafter 1st Aydin Email]; Rivera Dep., at 136:4–17.

[11] 1st Aydin Email, at 1.

[12] See Def.'s Mot. Summ. J., Ex. G, 1–4 [#38]; Rivera Dep., at 140:14–18.

not remove the pallet charge to which Aydin had objected.[13] In response to the revised proposed sales confirmation, Aydin again objected to the pallet charge.[14] Specifically, he stated: "The revised contract reads the same, + pallets."[15] Defendant did not sign or stamp the November 21 proposed sales confirmation.[16]

As a result of this disagreement, Defendant did not purchase any WPC from Plaintiff.[17] On April 6, 2012, Plaintiff filed a complaint in Massachusetts Superior Court for breach of contract.

III.    Discussion

The Complaint asserts that Massachusetts General Law ch. 106, § 201 applies in this case.[18] Section 201 is identical to Section 2-201 of the Uniform Commercial Code ("UCC").[19]

Under the UCC, if an alleged contract for the sale of goods over $500 is not "signed by the party against whom enforcement is sought," it "is not enforceable by way of action."[20] Such an alleged contract may be enforceable, however, if both parties are merchants. Under the UCC,

---

[13] See Def.'s Mot. Summ. J., Ex. G, 1–4 [#38]; Rivera Dep., at 138:22–139:8.

[14] See Def.'s Mot. Summ. J., Ex. H, 1 [#38] [hereinafter 2d Aydin Email]; Rivera Dep., at 138:10-25.

[15] 2d Aydin Email, at 1.

[16] See Rivera Dep., at 167:1–6.

[17] Compl. ¶¶ 21–22 [#1-1].

[18] See Compl. ¶ 24 [#1-1].

[19] At the time of the 2011 negotiations between the Parties, Plaintiff was in Massachusetts and Defendant was in Pennsylvania. The proposed sales confirmation does not contain a choice-of-law provision. But both Massachusetts General Laws ch. 106, § 201 and U.C.C. § 2-201 are identical to Pennsylvania's version of Section 2-201 relating to the sale of goods. See 13 Pa.C.S. § 2201. Because the law under Section 2-201 is consistent in Massachusetts and Pennsylvania, a choice-of-law analysis is unnecessary here.

[20] U.C.C. § 2-201(1).

if both parties are merchants and "if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents," the contract is enforceable "unless written notice of objection to its contents is given within 10 days after it is received."[21]

Here, Defendant has conceded for the purposes of its summary judgment motion that: Plaintiff sent its proposed sales confirmation within a reasonable time after the alleged oral agreement; Defendant received the proposed sales confirmation; and Defendant had reason to know of its contents. Accordingly, the sole issue facing this court on summary judgment is whether Defendant gave "written notice of objection" to the contents of the proposed sales confirmation "within 10 days of receipt."[22]

Aydin sent his two emails that objected, on behalf of Defendant, to the pallet charge within ten days of Defendant's receipt of Plaintiff's proposed sales confirmation. Indeed, Plaintiff does not dispute the timing of Aydin's emails. Rather, Plaintiff contends that Aydin's two emails did not constitute "objections" within the meaning of the UCC[23] and that Defendant was required to "deny the existence of a contract."[24]

The plain language of the UCC imposes no such requirement. That is, a merchant's objection to a confirmation need not "deny the existence of a contract." Indeed, the UCC contains no requirement as to the form of an objection.[25] The UCC requires *only* that there be

---

[21] Id. § 2-201(2).

[22] Id.

[23] Opp'n, at 9.

[24] Opp'n ¶ 14.

[25] See U.C.C. § 2-201(2); see also Gen. Trading Int'l, Inc. v. Wal-Mart Stores, Inc., 320 F.3d 831, 837 (8th Cir. 2003) (holding that section 2-201(2) "does not prescribe any particular form

some "written notice of objection to [the contract's] contents."[26] Case law interpreting this section of the UCC invariably holds that timely objections to various terms of a confirmation constitute valid objections.[27]

Here, Defendant provided written objection, in two separate writings, both dated within ten days of the receipt of Plaintiff's proposed sales confirmation, to the contents of that proposed sales confirmation. Aydin's emails are sufficient to constitute objections under the UCC, and thus no contract between the Parties was formed.[28]

IV.   Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is ALLOWED. AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge

---

for an objection to a confirmatory writing.").

[26] U.C.C. § 2-201(2).

[27] See, e.g., Gen. Trading Int'l, 320 F.3d at 837 (holding that the plaintiff's response, demanding full payment, to the defendant's confirmation of $200,000 in markdowns, where the plaintiff's response did not specifically refer to the $200,000 in markdowns, "can only be characterized as unequivocal objections to any agreement on markdowns"); Orteck Int'l Inc. v. Transpacific Tire & Wheel, Inc., 704 F. Supp. 2d 499, 514 (D. Md. 2010) (holding that where the defendant's response to the plaintiff's confirmation did not confirm a contract between the parties and instead disputed one point in the plaintiff's email, the contract did not fall within the "merchant exception" to the Statute of Frauds).

[28] The two cases cited by Plaintiff on this point, see Opp'n, at 9–10 (citing Simmons Oil Corp. v. Bulk Sales Corp., 498 F. Supp. 457 (D.N.J. 1980); Perdue Farms, Inc. v. Motts, Inc., 459 F. Supp. 7 (N.D. Miss. 1978)), are unavailing. Neither case concerns the merchant exception of the UCC. Rather, in both cases, the parties expressly confirm that they have reached oral agreements and merely request different terms than those to which the parties had agreed. See Simmons Oil, 498 F. Supp. at 462; Perdue Farms, 459 F. Supp. at 22.